Read, J.
This case comes before the court upon motion to dissolve the injunction, and on demurrer to the bill.
The bill seeks to embrace in one suit the entire affairs of the Portage Canal and Manufacturing Company, and unite *in a single litigation, not only every question which can arise among the stockholders themselves, but the settlement of every question, both in law and equity, which may exist between the company and third persons, and to accomplish this end, not only to exclude the jurisdiction of every other court, but to withdraw matters already j>ending in courts of competent jurisdiction. When we look into the history of this company and discover the multiplicity of questions, in law and equity, to which its conduct and and those connected with it have given rise, between themselves and third persons, running almost .the entire range of legal and equitable remedy, embracing trusts, frauds, conspiracies, usury, *340 equitable liens, embezzlements, contracts of every character, debts of every description, judgments at law, decrees in chancery, bills of review, actions of law, and bills in chancery pending, we feel that the court which could wrap up the whole in' one suit, and would have power and energies equal to the necessities of such a case, should at least have most ample powers.
Whether this court, having a regard to the well-known principles of equity proceedings and jurisdiction, and confining itself to the exercise of its powers, without encroaching upon courts of equal power and jurisdiction over the subject matter, can entertain this bill, is the question for determination.
The chief ground for dissolving the injunction is, that it restrains the action of a court of equal and concurrent jurisdiction. It is true that an injunction, to restrain proceedings in chancery is a novelty in equity practice, but whether a case might not arise which would induce the exercise of the restraining power in this mode, which in England is of frequent exercise in a different form, not suited to the organization of our courts, it is not necessary for us to decide. Wo shall confine ourselves to the inquiry, whether a court of equal jurisdiction can enjoin the proceooings of another court of equal jurisdiction. This, I presume, would not be claimed. But so far as the injunction proceeds in this case, ' *it extends to matters over which the court of common pleas has precisely the same jurisdiction as the Supreme Court. If the Supreme Court could enjoin the proceedings of the court of common pleas, the common pleas could equally enjoin the proceedings of the Supreme Court; and if the Supreme Court can take the eases pending in the common pleas and draw them to its own jurisdiction, we see no reason why the common pleas could not, with equal propriety, enjoin the proceedings in. this court, and take possession of this very case. The rule is, where there are courts of equal and concurrent jurisdiction, that the court possesses the case in which jurisdiction first attaches. But it is said that this court does not, by its injunction, act itpon the court, but the parties; but this, in effect, is the same thing. If this court can enjoin the suitors in the court of common pleas, and compel them to litigate a matter pending in the court of common pleas in this court, it is the same thing in effect as restraining the court. No example of this soi’t is to be found in the books. The cases cited to support this proposition from England are cases of courts *341 of limited and inferior jurisdiction and foreign courts. But it is said that there is a necessity for this; no such necessity exists. The court of common pleas has as ample power to do justice between the parties as this court. But it is'said all these matters should be tried in one suit in order that justice may be done-We know of no principle by which parties having distinct and separate rights shall bo compelled to litigate them in one suit. Indeed, they would not bo permitted so to litigate upon ordinary and familiar principles. But it is said if these suits are permitted to go on and be carried into execution, that it will occasion ruinous loss to the company. This is to bo much regretted, and probably will be to some extent the result; but if such be the case, we know of no principle upon which we can restrain a creditor from collecting his dobt, and compel him to abide a litigation which may continue for years, involving a settlement of the entire affairs of the company.
*But the question now arises, will the court entertain the bill for final relief?
Want of jurisdiction may be mot by plea, but it is good ground of demurrer if it appears upon the face of the bill. Jurisdiction having attached to certain matters embraced in the bill in the court of common pleas, having equal and concurrent jurisdiction, this court has no jurisdiction over the same subject matter. This appears upon the face of the bill, and is, therefore, good ground of demurrer. But there is another ground of demurrer—the bill is multifarious. This is not denied.
The bill is crowded with distinct and independent matters.
But it is sought to avoid these objections, and sustain the bill, upon the ground that it is a convenient and proper mode to settle up the affairs of the company, and necessary to prevent ruinous loss—that the officers and agents of the company have been guiltyr of mismanagement and fraud in the creation of some of the debts and obligations upon which suits aro prosecuted. But unless the injunction is continued, the nocossi ty for the bill upon its chief grounds ceases; for the only reason of uniting all these interests in one suit is to prevent a sacrifice of the property by sale in parcels. But the bare fact that a person may have a great number of creditors will not authorize the debtor to compel them to litigate their claims in one suit, lest they may obtain judgments and decrees, and seize upon his property in parcels, which may *342 occasion loss. It is a fundamental right that a person having a distinct claim may prosecute it in a distinct suit, and will not bo compelled to litigate with others. Multiplicity of suits against the same person, by others having distinct and separate rights, is no ground for equitable interference to compel a consolidation. The frauds and delinquencies of the officers and agents of tho corporation, and tho fact that they refuse to make defense to suits, will not support this bill. If it be claimed that the officers of the corporation have combined with complainants to have a *dccroe, and refuse to make a defense, in order that the property of the corporation may be sacrificed, it will not authorize this court to sustain a bill on the part of a stockholder, to call the same matter pending in a court of equal jurisdiction, in question in this court. If the proper officers refuse or neglect in such case to make a defense, the stockholder, by cross-bill or petition, should make himself a party, and obtain leave to defend. The only ground upon which this bill can be placed is that of convenience, to save costs, to prevent a sacrifice of corporate property, and a loss to creditors. Neither one, nor all of these grounds, are sufficient to authorize this court to entertain a multifarious bill, and interfere with the jurisdiction of a court of equal and concurrent jurisdiction. So far as the latter is concerned, wo do not possess the power; and as to the former, there is no principle upon which we could compel a person having a distinct right to prosecute his debtor with others, simply because there happened to be a great number of creditors, except in tho case of a creditor’s bill, where it is sought to .reach a common fund, to satisfy claims which have been previously established, and where one suit can accomplish the same end with equal benefit to all. But in this bill the righs are separate, distinct, unascertained, and conflicting; and this is not an effort to bring an equitable fund within the reach of creditors, which constitutes the unity of a creditor’s bill. There is no principle upon which it can bo sustained.
That chancery could afford the relief sought, would hardly have been expected, had not the interests involved been very large. That there has been fraud and mismanagement on tho part of tho agents and officers of the corporation, may be readily conceived ; and that some of its members may be seeking to plunder its assets, is not perhaps beyond belief; and that the corporation is in *343 such condition that it must sustain great sacrifice; and that creditors and stockholders may be subjected to loss, may be true. But this case, although much to bo regretted, is of common example in the mismanagement and insolvency of large concerns, tand does not furnish sufficient reason to this court to give a remedy in violation of well-settled chancery principles, and to attempt to execute a controlling power over other courts of equal and concurrent jurisdiction, which it does not possess.
Injunction dissolved, demurrer sustained, and bill dismissed.
Birchard, C. J., dissented